IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHAWNETTE LYNN SHERBINO,

    Plaintiff,

v.                                                         Civ. No. 22-273 KG/GBW

LUIS C. ROJERO and
LAURA I. ROJERO,

    Intervenors.

MEMORANDUM OPINION AND ORDER

    This matter comes before the Court sua sponte. The Court takes note of the following pleadings and briefs the parties have filed: (1) Intervenors Luis C. Rojero and Laura I. Rojero's (Rojeros) Complaint (Doc. 50), filed September 13, 2024, (2) Plaintiff Shawnette Lynn Sherbino's (Sherbino) Answer (Doc. 51), filed September 26, 2024, (3) Intervenors' Brief on Choice of Law (Doc. 41), filed January 9, 2024, (4) Plaintiff's Response to Intervenors' Brief Regarding Choice of Law (Doc. 43), filed January 21, 2024, and (5) Plaintiff's Motion for Judgment by Default (Doc. 54), filed January 9, 2025. Considering the record, the briefing, and the relevant case law, the Court, in its discretion, abstains from this case and therefore does not rule on the parties' choice of law briefs (Docs. 41, 43), and denies, as moot, Plaintiff's Motion for Judgment by Default (Doc. 54).

*I. Background*

    This case stems from a dispute over life insurance proceeds after the tragic death of Decedent Luis Rojero. What is not disputed is Decedent died in Lincoln County, New Mexico on April 19, 2021, and Plaintiff killed him. *See* (Doc. 50) (alleging Plaintiff fired a single, fatal

gunshot at Decedent's head); (Doc. 51) at 3 (admitting the same).   The question is: Who is entitled to Decedent's life insurance proceeds?   Before addressing this question, a brief history of the related proceedings is necessary.

   A.  *The Texas Probate Court Proceedings*[1]

Before this case landed in this Court, Plaintiff filed a separate action in El Paso County, Texas Probate Court (Texas Probate Court).   (Doc. 46) at 6.   The Texas case is still pending.  Because the Texas case is of import to this case, the Court begins by providing relevant details from the Texas case before detailing the proceedings before this Court.

On June 3, 2021, just over six weeks following Decedent's death, Plaintiff filed an Application for Independent Administration (Application) of Decedent's estate, claiming she was married to Decedent.   *Id.* at 5–8.   Approximately four months later, on October 6, 2021, Laura I. Rojero—Decedent's mother, and an Intervenor in this case—countered Plaintiff's Application with her own Application for Independent Administration.   *Id.* at 44–47.   On January 6, 2021, Plaintiff filed a summary judgment motion on her Application.   *Id.* at 63–67.  Shortly thereafter, on February 22, 2022, the Rojeros filed a response to Sherbino's summary judgment motion.   *Id.* at 96–104.   A review of the state court docket indicates that on or around February 28, 2022, the Texas Probate Court heard arguments on the summary judgment motion but has yet to issue a ruling.   *See* El Paso Probate Court 2 Docket, *In Re: Luis Armando Rojero, Deceased*, 2021-CPR01010.

---

[1] On the Court's Order (Doc. 40), Intervenors supplemented the record with the Texas Probate Proceedings (Doc. 46), and it is well-established that the Court "may take judicial notice of public records."   *Guttman v. Khalsa*, 669 F.3d 1101, 1127 (10th Cir. 2012).

On February 2, 2022, before responding to Sherbino's summary judgment motion, the Rojeros filed their first cross petition against Sherbino. (Doc. 46) at 81–83. This cross petition sought to enjoin Sherbino from accessing Decedent's life insurance policy proceeds and requested the Texas Probate Court impose a constructive trust over the insurance proceeds and assets of Decedent's estate. *Id.* at 82–83. Less than two weeks later, on February 14, 2022, Sherbino was served with the Rojeros' cross petition. *Id.* at 93–94. On March 7, 2022, Sherbino filed her answer to the Rojeros' first cross petition. *Id.* at 116–19. Over a year later, on May 12, 2023, the Rojeros filed an amended petition, again seeking to enjoin Sherbino from accessing Decedent's life insurance policy proceeds and requesting the Court impose a constructive trust over the same proceeds and assets of Decedent's estate. *Id.* at 124–29.

B. *The Proceedings Before this Court*

Initially, Plaintiff Sherbino brought this suit against Defendant Allstate Assurance Company in New Mexico's Twelfth Judicial District Court on February 28, 2022.[2] *See* New Mexico State Court Docket, *Sherbino v. Allstate Assurance Co.*, D-1226-CV-2022-00028. On March 9, 2022, Plaintiff filed her Amended Complaint and subsequently served Allstate. (Doc. 1-1) at 12.[3] Because Plaintiff and Allstate are citizens of different states and the amount in controversy is $1,000,000, Allstate removed the case on diversity jurisdiction. *Id.*

---

[2] Like the Texas Probate Proceeding, the Court takes judicial notice of the New Mexico State District Court Proceeding.

[3] The Court notes that Allstate Assurance Company was an improperly named defendant in this case. (Doc. 1) at 1 n.1. It was Allstate Life Insurance Company, which issued the policy that has been the subject to this action, and Allstate Life Insurance Company subsequently changed its name to Everlake Assurance Company. *Id.* However, for the sake of consistency, the Court will refer to Defendant as Allstate.

3

The primary issue between Plaintiff and Allstate was whether Plaintiff, as the named primary beneficiary on Decedent's life insurance policy was entitled to the life insurance proceeds when she caused Decedent's death. (Doc. 8). Although Allstate did not contest the payment of the death benefits, it was "unable to make a determination as to the payment of the proceeds," because Decedent's death was subject to criminal investigation. *Id.* at 2. This is because New Mexico's slayer statute precludes a person from profiting from the commission of a murder where that person is convicted of a capital, first or second-degree felony related to the murder. NMSA 1978, § 30-2-9(A). Consequently, Allstate deposited the life insurance proceeds in the Court's registry in June 2022 pending the outcome of the criminal investigation. *See* (Doc. 9).

The completed criminal investigation resulted in Plaintiff being charged in a one-count criminal complaint for involuntary manslaughter. (Doc. 19) at 1. Because involuntary manslaughter is a fourth-degree felony, Plaintiff was not precluded from receiving the deposited life insurance proceeds under New Mexico's slayer statute. *Id.* at 1–2. As a result, on April 11, 2023, Plaintiff and Defendant filed a joint notice of agreed upon settlement. *Id.* However, before the parties filed their closing documents, Decedents' parents, Intervenors Luis C. Rojero and Laura I. Rojero filed a Motion for Intervention. (Doc. 22). On November 7, 2023, Plaintiff, Defendant, and the Rojeros jointly moved the Court to dismiss and discharge Allstate from the case. (Doc. 33). Accordingly, the Court dismissed Allstate as a party on November 8, 2023. (Doc. 34).

Approximately one month later, on December 4, 2023, the Court held a hearing on the Rojeros' Motion for Intervention, granting their motion based on a finding that the Rojeros

4

satisfied Fed. R. Civ. P. 24(a)(2).  *See* (Doc. 35) (summary order referring to the reasons explained on the hearing record as the basis for granting the Rojeros' Motion for Intervention). However, because the Rojeros did not attach a pleading to their Motion for Intervention as required under Fed. R. Civ. P. 24(d), the Court ordered them to file their pleading.  (Doc. 49). In compliance with the Court's order, Intervenors filed their Complaint on September 13, 2024. (Doc. 50).  In their Complaint, Intervenors request declaratory judgment, requesting that the dispute over Decedent's insurance proceeds be resolved in the Texas Probate Court.  *Id.* at 5–6. In the alternative, they request the laws of Texas be applied to determine who is entitled to receive the insurance policy proceeds.  *Id.* at 6.  On September 26, 2024,   Plaintiff filed an answer, asserting a counterclaim against Intervenors.  (Doc. 51).  Plaintiff then filed her Motion for Judgment by Default on January 9, 2025, because Intervenors did not respond to her counterclaim.  (Doc. 54).  Intervenors filed an answer the next day.  (Doc. 56).

The upshot of this procedural history is the Court is now adjudicating a case between two nondiverse, adverse parties from Texas on state law grounds.  This, of course, raises a jurisdictional question because the Court's subject matter justification is based on diversity jurisdiction under 28 U.S.C. § 1332.  Thus, the Court first considers whether it can retain subject matter jurisdiction in this case.  If the Court is satisfied it has jurisdiction, it can consider the merits of the case.

II. *Discussion*

    A. *Jurisdiction*

In their Complaint, Intervenors assert that the Court's jurisdiction over this was destroyed when Allstate was a dismissed from the case.  (Doc. 50) at 2 (citing 28 U.S.C. § 1332(a)).

Although diversity of citizenship does not exist among the remaining parties, ordinarily, the Court's jurisdiction "depends upon the state of things" at the time when the action was brought, and after jurisdiction vests, it "cannot be ousted by subsequent events." *Price v. Wolford*, 608 F.3d 698, 702 (10th Cir. 2010) (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)). Here, when the suit was first brought, there is no question the Court had diversity jurisdiction over Plaintiff Sherbino and Defendant Allstate. Plaintiff properly alleged the amount in controversy was greater than $75,000 and the parties were citizens of different states. (Doc. 1-1).

"Once a district court has jurisdiction, additional claims and parties can be added under the supplemental-jurisdiction statute, 28 U.S.C. § 1367(a)." *Price*, 608 F.3d at 702. Section 1367 provides:

> (a) Except as provided in subsections (b) and (c)…, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). "A claim is part of the same case or controversy if it 'derive[s] from a common nucleus of operative fact.'" *Price*, 608 F.3d at 702–03 (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997). In this case, Intervenors' claim to the life insurance proceeds arises out of the same facts as Plaintiff's underlying claim. *See id.* at 703 ("[T]here is no question that [Intervenor's] claim for a share of the settlement proceeds arises out of the same facts as the underlying tort claim."). "And § 1367(a) explicitly states that 'supplemental jurisdiction shall include claims that involve the joinder or *intervention* of additional parties.'" *Id.* (quoting 28 U.S.C. § 1367(a)) (emphasis added).

Notably, § 1367(b) provides exceptions precluding district courts from exercising supplemental jurisdiction in some instances. These exceptions include:

> (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by *plaintiffs* against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as *plaintiffs* under Rule 19 of such rules, or seeking to intervene as *plaintiffs* under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b) (emphasis added). In this case, the Court granted the Rojeros' motion to intervene as a party under Fed. R. Civ. P. 24. (Doc. 35). But if Intervenors are aligned as plaintiffs, the Court would likely be required to reject supplemental jurisdiction. *Price*, 608 F.3d at 704. The Court, however, concludes Intervenors are more properly aligned as defendants, and is therefore satisfied it retains supplemental jurisdiction.

In determining party alignment, "courts are not bound by the way in which the parties seek to align themselves." *Id*. Instead, courts have a duty to "look beyond the pleadings, and arrange the parties according to their sides in the dispute." *City of Indianapolis v. Chase Nat. Bank of New York*, 314 U.S. 63, 69 (1941) (citation omitted); *see Colonial Penn Ins. Co. v. Am. Centennial Ins. Co.*, 1992 WL 350838, at *4 (S.D.N.Y.) ("The fact that [intervenor] sought to intervene as a plaintiff in this matter does not conclusively determine the alignment of the parties….[The] 'collision of interests' bars alignment of [plaintiff] and [intervenor] on the same side of the dispute.'").

In *Price*, the Tenth Circuit considered whether the Oklahoma Health Care Authority's (OHCA) intervention as a nondiverse party destroyed the court's diversity jurisdiction. 608

F.3d at 702–05. In affirming the district court's exercise of jurisdiction over the suit, the Tenth Circuit concluded the OHCA was properly aligned as a defendant, and thus none of the supplemental jurisdiction exceptions applied. *Id*. at 705. The Tenth Circuit explained that because any money awarded to OHCA would necessarily be taken from Plaintiffs' monetary recovery, a substantial conflict existed between Intervenor OHCA and Plaintiffs, precluding the OHCA from being realigned as a plaintiff. *Id*.

Here, like *Price*, there is a clear substantial conflict between Plaintiff and Intervenors. An award of the insurance proceeds to Plaintiff would preclude Intervenors' recovery. Consequently, Intervenors cannot be aligned as Plaintiffs. Therefore, the exceptions set forth in 28 U.S.C. § 1376(b) are not applicable here, and the Court is satisfied it retains supplemental jurisdiction.

With the jurisdictional question answered, the Court now discusses why abstention is appropriate.

   *B. Brillhart Abstention Doctrine*

As a preliminary matter, the Court notes that while the parties have touched on issues of abstention, their arguments are not fully developed. *See* (Doc. 41) at 4–5 (discussing courts power to abstain from and dismiss a case); (Docs. 50, 51) at ¶¶1, 18. To the extent the parties have not fully developed their abstention arguments, the Court notes its power to raise abstention sua sponte. *Morrow v. Winslow*, 94 F.3d 1386, 1390–91 (10th Cir. 1996) (citing *Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976)). In this case, the Court concludes abstention is appropriate under the *Brillhart* abstention doctrine.

In *Brillhart v. Excess Insurance Co. of America*, the Supreme Court explained that district courts are not compelled to exercise jurisdiction in declaratory judgment suits. 316 U.S. 491, 494 (1942). The Supreme Court explained:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Id.* at 495. A court should decide whether the suit would be better settled in the pending state court proceeding. *Id.* Accordingly, a district court has "discretion to withhold its exercise of jurisdiction over 'declaratory judgment actions.'" *U.S. v. City of Las Cruces*, 289 F.3d 1170, 1180 (10th Cir. 2002) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995); *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 982–83 (10th Cir. 1994)). A suit is considered a declaratory judgment action under *Brillhart* if a party requests only declaratory relief and not coercive relief. *Id.* at 1181 (citation omitted). Under *Brillhart*, courts have broad discretion to decline adjudicating a suit. *Id.* And in this case, the Court determines a *Brillhart* abstention analysis is useful because Intervenors request declaratory relief and there is a pending suit, not governed by federal law, in the Texas Probate Court presenting the same issue between the same parties. (Doc. 50).

In the Tenth Circuit, courts consider five factors when determining whether *Brillhart* counsels abstention. *Id.* at 1183. Application of these factors is reviewed for an abuse of discretion. *Id.* (citing *Mhoon*, 31 F.3d at 983). These factors include:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or

9

>to provide an arena for a race to *res judicata*; [4] whether use of declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* (quoting *Mhoon*, 31 F.3d at 983). The purpose of the first two questions is to determine whether the controversy could be better resolved in state court. *Id.* at 1187 (citing *Brillhart*, 316 U.S. at 495).

Under the first two *Mhoon* factors, the Court determines that ruling in this case would not fully settle the controversy between the two parties nor would it serve a useful purpose in clarifying the legal relationship at issue. The parties still have pending state law claims that both incorporate and are independent of the insurance proceeds claim. *See* (Doc. 46) (Intervenor Laura Rojero's Texas Probate Court counter-application to be appointed as independent administrator of Decedent's estate, and Intervenors' amended petition seeking to enjoin Sherbino from accessing Decedent's life insurance policy proceeds and requesting Texas Probate Court impose constructive trust on over insurance proceeds and assets of Decedent's estate); *see St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (affirming application of the *Brillhart* factors because parties had pending state action incorporating identical issue involved in declaratory judgment action); *Nationwide Mutual Ins. Co. v. C.R. Gurule, Inc.*, 148 F. Supp. 3d 1206, 1226 (D.N.M. 2015) (declining to exercise federal jurisdiction based on pending state law claim that was independent of federal claim). In resolving the parties' claims, the Texas Probate Court will necessarily determine the controversy and legal relationship at issue, making it "uneconomical as well as vexatious" for this Court to proceed. *Brillhart*, 316 U.S. at 494. Because this controversy could be better settled in the

Texas Probate Court, the Court determines the first two factors counsel against exercising jurisdiction.

The third *Mhoon* factor asks whether the declaratory remedy is being used for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata." In weighing this factor, courts consider the timing of the related cases, especially where "the timing of the federal claim suggests that its main purpose is to delay the state court action or receive a favorable judgment on an issue before the state court has a chance to fully develop the facts." *West Am. Ins. Co. v. Atyani*, 338 F. Supp. 3d 1227, 1233 (D.N.M. 2018) (citing *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995)). Here, the Court finds Plaintiff's commencement of this case highly suspect. Although it is Intervenors who seek declaratory judgment, it appears Plaintiff's decision to bring this case in New Mexico was an attempt to avoid the Texas Probate Court adjudicating the case. The Court briefly reviews the timeline of this case and the Texas Probate Court action.

As noted above, on June 3, 2021—before Plaintiff initiated this action—she filed an Application for Independent Administration (Application) of Decedent's estate in Texas Probate Court. (Doc. 46) at 5–8. Four months later, Intervenor Laura I. Rojero countered Plaintiff's Application by filing her own Application in Texas Probate Court. *Id.* at 44–47. Less than a month later, on February 2, 2022, Intervenors filed their first cross petition against Plaintiff, (1) seeking to enjoin her from accessing Decedent's life insurance policy proceeds, and (2) requesting the Court impose a constructive trust over the insurance proceeds and assets of Decedent's estate. *Id.* at 81–83. Plaintiff was served with the Intervenors' cross petition on February 14, 2022. *Id.* at 93–94.

11

On February 28, 2022, two weeks later, Plaintiff brought the instant action against Defendant Allstate Assurance Company in New Mexico's Twelfth Judicial District Court.  *See* New Mexico State Court Docket, *Sherbino v. Allstate Assurance Co.*, D-1226-CV-2022-00028. Then, on March 7, 2022, Plaintiff filed her answer to the Intervenors' first cross petition in Texas Probate Court.[4]  *Id.* at 116–19.  Two days later, on March 9, 2022, Plaintiff filed her Amended Complaint and subsequently served Allstate.  (Doc. 1-1) at 12.  This timeline clearly demonstrates that Plaintiff knew of Intervenors' constructive trust claim when she filed the New Mexico case.  Despite such knowledge, Plaintiff did not seek to have Intervenors joined or otherwise inform them of the state court action.  This suggests to the Court that Plaintiff was "in a race to res judicata" and attempting to avoid the Texas Probate Court proceeding. Consequently, the Court finds this factor weighs against exercising jurisdiction.  Even if this factor was neutral, the Court finds the other factors weigh against exercising jurisdiction.

The final two factors—whether use of declaratory action would increase friction between the federal and state courts and whether there is a better, more effective alternative remedy—also counsel in favor of abstention.  The Court believes exercising jurisdiction over this case would necessarily create friction with the Texas Probate Court for two reasons.  First, this case involves no federal issues, and the state law issues involved in this case implicate important matters of public policy—such as adjudicating a probate dispute.  *See Nationwide Mutual Ins. Co.*, 148 F. Supp. at 1226 (concluding *Brillhart* abstention was appropriate because "declaratory

---

[4] The Court notes that over a year later, on May 12, 2023, the Rojeros filed an amended petition, again seeking to enjoin Sherbino from accessing Decedent's life insurance policy proceeds and requesting the Court impose a constructive trust on over the same proceeds and assets of Decedent's estate.  Id. at 124–29.

12

judgment [claim] involves state law issues pending before a state court between the same parties"). The Court believes such disputes are best left to the Texas Probate Court—a court that specializes in such cases. Second, this case involves potential conflict of law issues. *See* (Docs. 41, 43). This creates a risk that this Court and the Texas Probate Court could come to different conclusions about the same matter or that the parties will be estopped from litigating an issue in state court. *See Nationwide Mutual Ins. Co.*, 148 F. Supp. 3d at 1229 (concluding exercising jurisdiction would create friction because the same parties were litigating the same issues in state court). Moreover, even without the danger of inconsistent results, adjudicating this case in federal court would still leave pending issues in the Texas Probate case. The reverse, however, is not true. The Court therefore concludes the fourth and fifth *Brillhart* factors weigh against exercising jurisdiction.

      Finally, having determined *Brillhart* abstention is appropriate, the Court now considers whether to stay or dismiss the case. The Tenth Circuit expressed a preference for issuing a stay rather than a dismissal in abstention cases. *Fox v. Maulding*, 16 F.3d 1079, 1083 (10th Cir. 1994). The is also true in the declaratory judgment context. *City of Las Cruces*, 289 F.3d 1192. Staying the case allows the Court to "quickly reconsider whether the state forum remains the best in which to hear the federal parties' claim should the court's predictions regarding the scope of the state proceedings turn out to be erroneous." *Id.* The Court therefore withholds jurisdiction in this case and issues a stay pending the resolution of the Texas Probate Court action.

*III. Conclusion*

      For the reasons discussed above, the Court determines abstention is appropriate in this case.  The Court therefore stays the case pending the resolution of the pending state court proceeding and declines to rule on the parties' choice of law briefs (Docs. 41, 43), and denies, as moot, Plaintiff's Motion for Judgment by Default (Doc. 54).

      IT IS SO ORDERED.

                                                /s/ KENNETH J. GONZALES[5]
                                                CHIEF UNITED STATES DISTRICT JUDGE

---

[5] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.